UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
RANDOLPH PORTER,                                            :
                                                            :
                            Plaintiff,                      :
                                                            :                    **OPINION AND ORDER**
                  -against-                                 :                    12-CV-0590 (DLI) (VMS)
                                                            :
ANDREA J. QUARANTILLO, District                             :
Director, New York District of U.S. Citizenship             :
and Immigration Services; U.S. CITIZENSHIP                  :
AND IMMIGRATION SERVICES,                                   :
                                                            :
                            Defendants.                     :
----------------------------------------------------------- X
**DORA L. IRIZARRY, U.S. District Judge:**

Randolph Porter ("Plaintiff") brings this action seeking a declaratory judgment that he has been a United States ("U.S.") citizen since the time of his birth in order to receive compensation for the death of his brother in the December 21, 1988 Lockerbie bombing. Plaintiff has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). (Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. ("Pl. Mem."), Docket Entry No. 20-2; Mem. of Law in Further Supp. of Pl.'s Mot. for Summ. J. and in Opp'n to Defs.' Cross-Mot. for J. on the Pleadings ("Pl. Reply Mem."), Docket Entry No. 22.) Defendants oppose Plaintiff's motion for summary judgment and have separately moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), seeking dismissal of Plaintiff's complaint for failure to state a claim upon which relief may be granted, or, in the alternative, dismissal on the basis that the Court should exercise its discretion to decline jurisdiction over the action. (Defs.' Mem. of Law in Supp. of Defs.' Mot. for J. on the Pleadings and in Opp'n to Pl.'s Mot. for Summ. J. ("Def. Mem."), Docket Entry No. 21-2; Defs.' Reply Mem. of Law in Supp. of Defs.' Mot. for J. on the Pleadings ("Def. Reply Mem."), Docket Entry

No. 25.) For the reasons set forth below, the Court has considered Plaintiff's request for declaratory relief and, in doing so, denies Plaintiff's motion for summary judgment. Additionally, Defendants' motion for judgment on the pleadings for failure to state a claim is converted into a cross-motion for summary judgment and is granted. As such, this action is dismissed.

## BACKGROUND

On May 13, 1929, Mary Louise Diamond ("Mary"), Plaintiff's mother, was born in Brooklyn, New York. (Pl.'s 56.1 Statement in Supp. of Mot. for Summ. J. ("Pl. 56.1") ¶ 1, Docket Entry No. 20-1; Defs.' Statement in Resp. to Pl.'s Statement of Undisputed Material Facts Purusant to Local Rule 56.1 ("Def. 56.1") ¶ 1, Docket Entry No. 21-1.) Mary was a U.S. citizen at the time of her birth. (Pl. 56.1 ¶ 2; Def. 56.1 ¶ 2.) According to Plaintiff, Mary moved to St. Vincent and the Grenadines ("St. Vincent") Islands at some point after Mary's first birthday in 1930, although the precise date of travel has not been identified. (Pl. Mem. at 2, 14.) On July 13, 1955, Mary gave birth to Plaintiff in St. Vincent. (Compl. ¶ 26, Docket Entry No. 1.) On July 25, 1969, when Plaintiff was fourteen years old, Plaintiff entered the United States as a lawful permanent resident, based on a visa petition filed on his behalf by Mary. (Decl. of Margaret M. Kolbe ("Kolbe Decl.") Ex. A, A126-33, Docket Entry No 21-3.)

On or about September 7, 1976, Plaintiff filed his initial application for naturalization (Form N-400). (Kolbe Decl. Ex. A, A85-86.) After Plaintiff failed to appear at least once for a re-examination on his petition, Plaintiff's application was deemed abandoned. (Kolbe Decl. Ex. A, A118, A123.) On September 20, 1994, Plaintiff filed another application for naturalization (Form N-400), and received a certificate of naturalization on June 14, 1995, thereby becoming a U.S. citizen. (Pl. 56.1 ¶¶ 6, 7; Def. 56.1 ¶¶ 6, 7; Kolbe Decl. Ex. A, A74-77.)

2

On December 21, 1988, before Plaintiff had received a certificate of naturalization, Plaintiff's brother, Walter Porter ("Walter"), was killed on Pan Am Flight 103, when a bomb planted on a plane by Libyan agents exploded over Lockerbie, Scotland. (Pl. 56.1 ¶ 16; Def. 56.1 ¶ 16.) In the following years, Plaintiff, along with other relatives of people killed in the bombing, filed lawsuits against the government of Libya in U.S. courts. On August 4, 2008, as part of the process of restoring normal relations between Libya and the United States, Congress approved the Libyan Claims Resolution Act. Pub. L. No. 110–301, 122 Stat. 2999 (2008). On October 31, 2008, the President of the United States issued Executive Order 13,477, Settlement of Claims Against Libya, which ordered all claims of U.S. nationals against Libya settled according to the terms of a claims settlement agreement between the United States and Libya. Exec. Order 13,477, 73 Fed. Reg. 65,965 (Oct. 31, 2008). Accordingly, Plaintiff's pending cases against Libya pertaining to the Lockerbie bombing were dismissed, and his claims were referred to the Foreign Claims Settlement Commission (the "FCSC"), which has the authority to adjudicate claims for the Libya Claims Program. (Declaration of Zoe Salzman ("Salzman Decl.") ¶ 6, Docket Entry No. 20-3.)

The FCSC has held that claimants must show they were U.S. citizens on or before December 21, 1988—the date of the Lockerbie bombing—as a prerequisite for receiving compensation. (Kolbe Decl. Ex. D.) Although Plaintiff is currently a U.S. citizen, on April 22, 2010, the FCSC informed Plaintiff's attorney that Plaintiff would need to establish that he was a U.S. citizen at the time of his brother's death in order to receive compensation from the Libya Claims Program. (*Id.*) Additionally, on January 31, 2011, the FCSC suggested that Plaintiff file an N-600 application for certificate of citizenship with the Department of Homeland Security to determine whether Plaintiff was, in fact, a U.S. citizen on December 21, 1988. (Pl. 56.1 ¶ 20;

3

Def. 56.1 ¶ 20.)

On February 16, 2011, Plaintiff filed an N-600 application for certificate of citizenship with the U.S. Citizenship and Immigration Services ("USCIS"). (Pl. 56.1 ¶ 21; Def. 56.1 ¶ 21.) USCIS denied the application on May 25, 2011 (the "May 25, 2011 Decision") on the ground that Plaintiff had not established that his mother had been present physically in the United States for one year prior to his birth. (Pl. 56.1 ¶ 22; Def. 56.1 ¶ 22.) The May 25, 2011 Decision informed Plaintiff that he could appeal the decision to the Administrative Appeals Office (the "AAO") within 30 days, and that failure to do so would result in the decision becoming final. (Salzman Decl. Ex. 17.) Plaintiff did not appeal the decision to the AAO, but instead filed an I-290B motion to reopen a decision with USCIS on July 27, 2011 in order to present additional documentation in support of his claim.[1] On November 22, 2011, Defendants issued a decision (the "November 22, 2011 Decision") that denied Plaintiff's motion to reopen and upheld the denial of Plaintiff's application for a certificate of citizenship, but did not state that Plaintiff had any further right to appeal. (Pl. 56.1 ¶ 24; Def. ¶ 24.) Plaintiff did not appeal the November 22, 2011 Decision.

On February 8, 2012, Plaintiff commenced the instant action. Plaintiff contends that he has conducted extensive searches for any written records documenting when Mary left the United States, which included searches of census, passport, and archive records. (Salzman Decl. ¶¶ 25-37.) The parties have also engaged in discovery as part of this action.

On July 5, 2012, the FCSC provided Plaintiff a copy of its proposed decision denying Plaintiff's compensation claim on the basis that "the U.S. government does not recognize

---

[1] The additional evidence presented in support of the motion to reopen included the affidavit of Thomas "Chippy" Augustus Brown, discussed further in Part III(b).

[Plaintiff] to have been a national of the United States on December 21, 1988, the date the claim arose." (Pl. 56.1 ¶ 25; Def. 56.1 ¶ 25; Salzman Decl. Ex. 19 at RP 521.) Plaintiff filed a notice of objection to the proposed decision, and the FCSC has scheduled a hearing on this objection for December 13, 2012. (Salzman Decl. Ex. 22.) According to Plaintiff, the FCSC has indicated that Plaintiff's compensation claim will likely be denied unless he obtains a certificate of citizenship before the December 13, 2012 hearing. (Pl. Mem. at 8-9.)

In light of the imminently approaching deadline, the parties filed the instant motions on an expedited basis. For the reasons set forth below, Plaintiff's requests for declaratory and summary judgments are denied, and Defendants' motion for judgment on the pleadings, which the Court has converted to a motion for summary judgment, is granted.

## DISCUSSION

I.   **Discretion Under the Declaratory Judgment Act**

8 U.S.C. § 1503(a), titled "Proceedings for declaration of United States nationality," permits an individual to institute an action in district court, under the Declaratory Judgment Act, for a judgment declaring the individual to be a national of the United States.[2] Defendants do not

---

[2] Section 1503(a) provides, in pertinent part, as follows:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States . . . . An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

8 U.S.C. § 1503(a).

argue that Plaintiff's suit must be dismissed for failure to satisfy subject matter jurisdictional prerequisites or any other mandatory requirements. Instead, Defendants argue that the Court should exercise the discretion vested to district courts under the Declaratory Judgment Act and refrain from hearing the action. (Def. Mem. at 5-8; Def. Reply Mem. at 2-5.) Section 2201 of the Declaratory Judgment Act provides in pertinent part as follows:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration . . . .

28 U.S.C. § 2201(a) (emphasis added); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."). The factors to guide the exercise of discretion in Declaratory Judgment Act cases are: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved and (2) whether a judgment would finalize the controversy and offer relief from uncertainty. *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003).

Defendants contend that it "would be appropriate" for this Court to refrain from hearing the action because Plaintiff failed to appeal the May 25, 2011 Decision to the AOO. (Def. Mem. at 7.) However, by its terms, the May 25, 2011 Decision is now final, and Plaintiff's motion to reopen the decision has been denied. (Salzman Decl. Exs. 17, 18.) Moreover, there is no evidence that Plaintiff sought relief in the district court for any improper purpose, or that there is an available or more effective remedy elsewhere.

Defendants also suggest that the Court should decline hear Plaintiff's claim because "Plaintiff has not taken meaningful steps to move this action forward," noting that Plaintiff

delayed for months in effecting proper service on the parties and making any application to the Court to schedule discovery and set a briefing schedule. (Def. Mem. at 7-8.) Finally, Defendants suggest that Plaintiff's lawsuit, initiated so that Plaintiff can receive settlement funds, is not type of case for which declaratory relief is appropriate. (Def. Reply Mem. at 2-3.)

While the Court agrees that Plaintiff could have pursued this action in a more expeditious fashion, recognizing the unique facts of this matter and the time-sensitive nature of the request, the Court will exercise its discretion to consider Plaintiff's request for declaratory relief.

## II.     Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

7

Defendants did not cross-move for summary judgment, but rather moved to dismiss the action for failure to state a claim pursuant to Rule 12(c).[3]  In doing so, however, Defendants do not address the sufficiency of the allegations in the complaint, but instead attack the *admissibility* of the documentary evidence used by Plaintiff to support those allegations.  (*See* Def. Mem. at 8 (contending that "[p]laintiff's complaint fails to state a claim because it seeks from this Court a declaration of citizenship based on documentary and testimonial evidence that is inadmissible . . . .").)  However, the admissibility of Plaintiff's supporting documents does not, on its own, render the allegations in his complaint implausible.  *See Campanella v. Cnty of Monroe*, 853 F. Supp. 2d 364, 378 (W.D.N.Y. 2012) ("[A]llegations based on hearsay . . . [do] not bar the Court from considering them on a motion to dismiss.  Neither *Twombly* nor *Iqbal* altered the rule that a plaintiff need not plead specific, admissible evidence in support of a claim, and a contrary rule would confuse the principles applicable to a motion to dismiss with those governing a motion for summary judgment.").  Accordingly, the Court converts Defendants' motion for judgment on the pleadings into a cross-motion for summary judgment.  *See Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) ("[A] district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings . . . .").

**III.   Plaintiff's Nationality Claim**

A suit under section 1503(a) authorizes a *de novo* judicial determination of the status of a plaintiff as a U.S. national.  *See Richards v. Sec'y of State, Dep't of State*, 752 F.2d 1413, 1417

---

[3] Where a Rule 12(c) motion asserts that a complaint fails to state a claim upon which relief can be granted, the motion is governed by the same standard that applies to a Rule 12(b)(6) motion. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation and internal quotations omitted).

(9th Cir. 1985). A plaintiff bears the burden of proving that he is entitled to derivative citizenship by preponderance of the evidence. *See United States v. Ghaloub*, 385 F.2d 567, 570 (2d Cir. 1966); *Eng v. Dulles*, 263 F.2d 834, 835 (2d Cir. 1959).

"[T]he applicable law for transmitting citizenship to a child born abroad when one parent is a [U.S.] citizen is the statute that was in effect at the time of the child's birth." *Drozd v. I.N.S.*, 155 F.3d 81, 86 (2d Cir. 1998). The relevant statute for transmitting citizenship to Plaintiff, who was born on July 13, 1955, reads as follows:

> [A] person born, on or after [December 23, 1952], outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth, and if the mother had previously been physically present in the United States or one of its outlying possessions for a continuous period of one year.

8 U.S.C. § 1409(c) (1952). Thus, Plaintiff must demonstrate by a preponderance of evidence, among other things, that Mary was physically present in the United States or one of its outlying possessions for a continuous period of one year prior to Plaintiff's birth.

First, Plaintiff attempts to prove the one-year physical presence requirement through testimonial evidence, which includes: (1) an affidavit from Mary stating that she resided in Brooklyn, New York continuously for the first year of her life and traveled from the United States to St. Vincent when she was between one and two years old; (2) an affidavit from Thomas "Chippy" Augustus Brown ("Chippy"), Mary's childhood friend, stating that Mary traveled from the United States to St. Vincent when she was "about" one and a half years old; and (3) declarations from several of Mary's family members stating that Mary traveled from the United States to St. Vincent when she was "approximately" one and a half years old. (Salzman Decl. Exs. 2-10.) None of these individuals claims to have personal knowledge of Mary's voyage to St. Vincent, nor is it plausible that they would have such knowledge. Instead, Plaintiff contends

9

that their statements are admissible as exceptions to the rule against hearsay. Second, with respect to documentary evidence, Plaintiff relies on a Saint Vincent police record certificate, which Plaintiff contends corroborates Mary's statement that she moved from the United States to St. Vincent after May 13, 1930, Mary's first birthday. (Salzman Decl. Ex. 5, A.)

As a preliminary matter, Defendants argue that the affidavits of Mary and Chippy, both of which were prepared in connection with Plaintiff's prior administrative action before USCIS, are defective in form and inadmissible because they do not contain "penalty of perjury" language or otherwise state that they are "true and correct." (Def. Mem. at 9-11; Def. Reply Mem. at 7-8.) Nonetheless, given that both affidavits were "duly sworn" before a notary public, the Court will consider them in connection with the pending motions. *See M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 209 (E.D.N.Y. 2010) (declining to strike declarations where "neither declaration contain[ed] the 'under penalty of perjury' language, [but] both declarations [were] notarized and indicate[d] that the declarants were 'duly sworn').

  a. *Affidavit of Mary L. Diamond*

Mary's affidavit states that she lived in Brooklyn, New York continuously for the first year of her life, and further, that "[w]hen [she] was between one year old and two years old, [she] moved to St. Vincent and the Grenadines." (Salzman Decl. Ex. 2 ¶¶ 5, 6.) Mary's affidavit does not state that she has personal knowledge of the event and does not otherwise identify a source or basis for the statement. Plaintiff contends that Mary's statement is nonetheless admissible and within the scope of Federal Rule of Evidence ("FRE") 804(b)(4)(A) as a "Statement of Personal of Family History." Under FRE 804(b)(4)(A), the following statements are not excluded by the rule against hearsay, if the declarant is unavailable[4] as a witness:

---

[4] Mary passed away earlier this year and is unavailable as a witness. (Pl. 56.1 ¶ 17; Def. 56.1 ¶

>  (4) Statement of Personal or Family History. A statement about:
>
> (A) the declarant's own birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption, or marriage, or similar facts of personal or family history, even though the declarant had no way of acquiring personal knowledge about that fact . . . .

FRE804(b)(4)(A).

Mary's estimate of her age at the time she moved to St. Vincent is not a statement about "birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption, or marriage," and thus, the statement is admissible only if it constitutes a "similar fact of personal or family history" within the meaning of this exception. However, FRE 804(b)(4)(A) is limited in scope and generally applies to facts concerning family pedigree and relationships, such as birth, ancestry, marriage, or death, because those facts are likely to be marked events in ordinary family history and based on accurate knowledge and sufficient inquiry. In *United States v. Carvalho*, 742 F.2d 146 (4th Cir. 1984), the Fourth Circuit noted that, under the common law pedigree exception, upon which FRE 804(b)(4) is based, the general inquiry as to the kind of fact that may be the subject of the pedigree exception was "[w]ere the ordinary circumstances named in the statement such a marked item in the ordinary family history and so interesting to the family in common that statements about them in the family would be likely to be based on fairly accurate knowledge and to be sincerely uttered." *Id.* at 151 n.8 (quoting 5 Wigmore, Evidence § 1502 (Chadbourn rev. 1974)). Furthermore, even if a statement concerns personal or family history, the statement must also be the type of fact that is inherently trustworthy and reliable to fall within the scope of FRE 804(b)(4). *See Carvalho*, 742 F.2d at 151 (holding that statements of "motive or purpose" for entering into marriage are not statements concerning personal or family history under FRE 804(b)(4)).

---

17.)

Mary's statement cannot be said to constitute personal or family history within the scope of FRE 804(b)(4). On its face, Mary's statement concerns her relocation to St. Vincent; it does not concern pedigree or family relationship. Moreover, Mary's statement is not being offered for the limited purpose of proving the *fact* that Mary moved to St. Vincent as a child; rather, Plaintiff offers it to ascribe a particular *age* to Mary at the time of travel. Unlike a statement concerning the fact or date of birth or marriage, a statement about an individual's specific age at the time of travel, or, indirectly, the date of travel, is not likely to be based on accurate knowledge and sufficient inquiry. *Compare Vega-Alvarado v. Holder*, 2011 WL 333101, at *4 (C.D. Cal. Jan. 28, 2011) (holding that "[declarant's] statements concerning his time and work in the United States do[es] not constitute 'personal or family history' within the meaning of [FRE 804(b)(4)(A) [and] do[es] not concern matters of pedigree, such as the fact or date of a birth, marriage or death, nor do they relate to the existence of a ceremony or family relationship") (citing *Carvalho*, 742 F.2d at 151), *with United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997) (holding that "the district court properly admitted Hernandez's admissions concerning the location of his birth" under FRE 804(b)(4)(A)). Moreover, Mary's affidavit does not indicate Mary's basis of knowledge and does not provide any facts or special circumstances that might indicate that there had, in fact, been sufficient inquiry and discussion by her family on the topic.

Plaintiff cites two authorities in which testimony under FRE 804(b)(4) was deemed admissible for the purpose of establishing citizenship. Both are distinguishable. In the first, *Ramirez v. Clinton*, 2011 WL 2838173 (D. Minn. July 18, 2011), the court permitted the plaintiff to testify that "her parents always told her that she was born in the United States." *Id.* at *4. In contrast to the plaintiff in *Ramirez*, however, Mary's statement concerns her age at the time she moved to St. Vincent, a fact that is inherently less reliable than a statement about the date or

12

location of one's birth.  In the second, *Leal Santos v. Gonzales*, 495 F. Supp. 2d 180 (D. Mass. 2007), *aff'd*, 516 F.3d 1 (1st Cir. 2008), the court permitted a grandson to testify that his grandmother, who was unavailable as a witness, "told him many times ever since he was a child that she came to the United States twice as a girl." *Id.* at 185-86.  In that case, the grandson's testimony was based on numerous discussions with his grandmother, who was old enough to have some personal knowledge of her time in the United States, and the grandson's testimony provided specific timeframes that were consistent with his grandmother's recent statements to immigration officials.  *Id.*  Here, in contrast, Mary's affidavit does not have the same indicia of reliability.  Indeed, Mary's imprecise statement is being offered to ascribe a particular age to Mary at the time she traveled to St. Vincent, yet the affidavit does not reveal the basis or source of Mary's knowledge or otherwise provide facts that would suggest that the statement stems from sufficient and accurate inquiry by Mary's family or community.

Accordingly, Mary's statement concerning her age at the time she traveled to St. Vincent is not within the scope of FRE 804(b)(4)(A), and is, therefore, inadmissible.

   b. *Affidavit of Chippy and Declarations of Mary's Relatives*

Plaintiff's motion for summary judgment is also supported by an affidavit from Chippy, Mary's childhood friend.  Chippy, who was one year older than Mary and first became friends with Mary when she was ten years old, states in a sworn affidavit that "Mary Diamond told me that she moved from New York to Saint Vincent and the Grenadines when she was about one and a half years old," and further, that "[t]his was common knowledge amongst the people who knew her at the time."  (Salzman Decl. Ex. 3, ¶¶ 4-7.)  Plaintiff also relies on seven declarations from the following relatives of Mary:  Plaintiff, Gwenneth Forde, Victoria Porter, Olga Husbands, Elfrieda Porter-Bacchus, and Vernon Druses (Mary's six children), and Ardril Evelyn

13

Jackson (Mary's third cousin). Mary's relatives—all of whom are younger than Mary—state, in matching fashion, the following: "The reputation among the members of my family and in our community is that . . . Mary . . . moved to Saint Vincent to be raised by her grandmother when she was approximately one and a half years old." (Salzman Decl. Ex. 4 ¶ 8; Ex. 5 ¶ 5; Ex. 6 ¶ 3 Ex. 7 ¶ 3; Ex. 8 ¶ 3; Ex. 9 ¶ 3; Ex. 10 ¶ 3.)

Plaintiff argues that the statements by Chippy and Mary's relatives are not excluded by the rule against hearsay and admissible as reputation evidence concerning Mary's personal and family history under FRE 803(19). FRE 803(19), which, aside from the addition of "death," lists the same topics found in FRE 804(b)(4), provides as follows:

> Reputation Concerning Personal or Family History. A reputation among a person's family by blood, adoption, or marriage—or among a person's associates or in the community—concerning the person's birth, adoption, legitimacy, ancestry, marriage, divorce, death, relationship by blood, adoption, or marriage, or similar facts of personal or family history.

FRE 803(19).

Similar to FRE 804(b)(4), trustworthiness in reputation evidence is found under FRE 803(19) "when a topic is such that the facts are likely to have been inquired about and that persons having personal knowledge have disclosed facts which have thus been discussed in the community." FRE 813(19-21) advisory committee note (citation and internal quotations omitted). A reputation concerning Mary's precise age at the time she traveled to St. Vincent— namely, whether, in 1930, Mary traveled to St. Vincent a few months before or a few months after her first birthday—does not concern Mary's family relationships or pedigree, and is not a matter that would likely be sufficiently inquired about or discussed. *See* 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 803.21[2] (2d ed. 2012) ("[FRE 801(19)] does not require that reputation in question have been formulated before the controversy arose,

14

since a false reputation as to birth, death, or marriage is not likely to arise at any time. However, there is a greater possibility of inaccuracy concerning other aspects of family history, such as an ancestor's travels."). Here, Chippy and Mary's relatives also fail to provide specific facts or any unique circumstances to demonstrate that the topic of Mary's specific age when she arrived to St. Vincent was, in fact, sufficiently discussed in the community and based on disclosures by persons with personal knowledge.

The authorities relied on by Plaintiff do not support the admissibility of these statements because, unlike here, those cases involve statements that directly relate to birth, ancestry, and family relationships, matters that are inherently more reliable and clearly fall within the scope of FRE 803(19). *See United States v. Garcia-Flores*, 136 F. App'x 685, 688 (5th Cir. 2005) (finding no abuse of discretion to admit testimony that defendant was from El Salvador and not a U.S. citizen pursuant to FRE 803(19)); *United States v. Jean-Baptiste*, 166 F.3d 102, 110 (2d Cir. 1999) (holding that FRE 803(19) "plainly contemplates that members of a family may testify with regard to the common understanding as to the birth of another family member"); *United States v. Cargo*, 936 F.2d 573 (6th Cir. 1991) (finding testimony on whether individuals were "related" admissible under FRE 803(19)); *Ramirez*, 2011 WL 2838173, at *4 ("[Plaintiff's] reputation among her family that she was born in the United States is admissible and probative [under FRE 803(19)].").

Accordingly, the Court finds that the statements by Chippy and Mary's relatives concerning her age at the time she traveled to St. Vincent are not within the scope of FRE 803(19), and are, therefore, inadmissible.

    c. *Police Record*

The sole piece of documentary evidence relied on by Plaintiff is a document titled "Saint

Vincent Police Force," (the "Police Record Certificate"), which states as follows: "To Whom It May Concern . . . [t]he name of name of Mary Louise Diamond a native of U.S.A. does not appear in the Criminal Records from *1930 to 21st February 1961*." (Salzman Decl. Ex. 5, A (emphasis added).)  In connection with the Police Record Certificate, Plaintiff also submits a letter from the current Saint Vincent Chief Immigration Officer. (Salzman Decl. Ex. 5, B.)  The Chief Immigration Officer's letter states that the Police Record Certificate was issued to Mary in 1961 (the year Mary moved back to the United States), and that the Police Record Certificate was generated by the Saint Vincent police based on a review of immigration records available at the time.[5]  (*Id.*)  The letter also states that the Police Record Certificate "indicates that [Mary] lived in St. Vincent *between the period 1930 – 1961*." (*Id.* (emphasis added).)

The Police Record Certificate does not establish that the physical presence requirement has been met.  The key issue in this case is whether Mary lived continuously in the United States for at least one year prior to moving to St. Vincent.  At best, the Police Record Certificate would prove that Mary, after being born in Brooklyn on May 13, 1929, moved to St. Vincent at an unspecified date in 1930.  However, proof that Mary moved to St. Vincent at some point during 1930 does not, on its own, make it more likely to be true than not that Mary moved to St. Vincent *after* her first birthday on May 13, 1930.

Additionally, as Defendants contend, the Police Record Certificate does not appear to be properly authenticated under FRE 901.  FRE 901(a) requires the proponent of any evidence to submit evidence sufficient to support a finding that the matter in question is what its proponent claims.  *See United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir. 1991) ("[FRE 901] is

---

[5] The letter further states that the St. Vincent immigration records were destroyed in 1989 in a fire at the police headquarters that housed the Passports and Immigration Department. (Salzman Decl. Ex. 5, B.)

satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.") (internal quotations and citation omitted).  Here, Plaintiff offers an unsworn letter from the Chief Immigration Officer, not sworn testimony, to describe the contents of the document.  *See Trustees of the New York City Dist. Council of Carpenters Pension Fund Welfare Fund Annuity Fund v. Northeast Serv. Group Ltd.*, 2012 WL 2861337, at *3 (S.D.N.Y. July 09, 2012) ("Proper authentication requires submission with an affidavit or other sworn statement attesting to what the [document] actually is and whether it is a true and correct copy of what it purports to be.").  Although Plaintiff offers for authentication purposes the declaration of Mary's sister, Ardril Evelyn Jackson, which states that Ardril found the Police Record Certificate while going through Mary's personal belongings in April 2012, Ardril does not have a basis to certify that the Police Record Certificate is, in fact, an authentic St. Vincent police document.  Nor is Ardril the appropriate witness to testify about the contents of the Police Record Certificate or the procedures the St. Vincent police department follows in generating, acquiring, and maintaining documents of this type.  *See State of New York v. St. Francis Hosp.*, 94 F. Supp. 2d 423, 426 (S.D.N.Y. 2000) ("[D]ocuments must be attached to and authenticated by an appropriate affidavit and the affiant must be a competent witness through whom the documents could be received into evidence at trial.").[6]

Because Plaintiff has failed, after sufficient time for discovery, to submit admissible and probative evidence of an essential element of his case that he bears the burden of proving—the one-year physical presence requirement—a grant of summary judgment in favor of Defendants is warranted.  *See Celotex*, 477 U.S. at 323 ("The moving party is entitled to a judgment as a matter

---

[6] Plaintiff does not argue that the Police Record Certificate, which is not accompanied by a final certification, is self-authenticating under FRE 902.  *See* FRE 902(3) (requiring foreign public documents to be accompanied by a final certification).

17

of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.") (internal quotations omitted).[7]

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is denied, and Defendants' cross-motion for summary judgment is granted. This action is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
        December 7, 2012

                                               _____/s/_____
                                                    DORA L. IRIZARRY
                                                  United States District Judge

---

[7] Plaintiff argues that Defendants should be precluded from relying on certain evidence that purportedly was not timely disclosed during discovery. (Pl. Reply Mem. at 7-11.) That evidence includes an affidavit from Joseph Cardinale, a USCIS Field Office Director, in which Mr. Cardinale states that Plaintiff's administrative records from 1978 contain a notation by an INS examiner acknowledging Plaintiff's "lack of proof" of the one-year physical presence requirement, and further, that the administrative records of Plaintiff's siblings contain similar notations. (Kolbe Decl. Ex. B ¶¶ 6-8.) Defendants claim they do not rely on this evidence to argue that Mary resided in the United States for less than one year prior to Plaintiff's birth, but instead offer it to establish that Mary and Randolph were aware of the one-year physical presence requirement by 2011, the year that Mary signed her affidavit in support of Plaintiff's application for a certificate of citizenship. (Def. Reply Mem. at 8-10.) In any event, because Plaintiff has not made a sufficient showing with respect to the one-year physical presence requirement, an essential element of his case, the Court need not determine whether this evidence should be excluded.